# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND BOBEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 2482 |
| | ) |
| BOLINGBROOK PARK DISTRICT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Bolingbrook Park District's ("District") motion to dismiss. For the reasons stated below, we deny the motion to dismiss in its entirety.

## BACKGROUND

Plaintiff Raymond Bobel ("Bobel") alleges that he began working for the District in February 2000. Bobel claims that in May 2003 he worked for the District as a Building and Aquatic Technician. Bobel states that he needed to have spinal surgery in order to correct a lower back condition and therefore requested leave from the District. On May 19, 2003, the District allegedly granted Bobel's request for

1

leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and his leave was effective beginning on May 13, 2003. Bobel claims that between May 2003 and August 2003, while he was on leave, he kept the District informed regarding his medical condition. According to Bobel, the District would not restore him to his prior position until he provided the District with a release from a physician indicating that Bobel was ready for full duty. Bobel claims that in a letter dated August 6, 2003, the District Resources Director Michelle Abbott ("Abbott") informed Bobel that his FMLA leave would be exhausted on August 11, 2003, and told Bobel that his continued absence was placing a hardship on the District operations. Bobel also claims that Abbott informed him that he could extend his unpaid leave by forwarding a request to James Patula ("Patula"), the District Superintendent of Parks and Planning. Bobel claims that he forwarded such a request to Patula on August 13, 2003. On August 19, 2003, Patula allegedly sent a letter to Bobel indicating that Bobel's FMLA leave had been extended to September 5, 2003, and informing Bobel that other District employees were being "overworked" in his absence and that some of Bobel's jobs were not getting completed at all. (Compl. Par. 10). In the letter, Patula also told Bobel to forward the results of the Functional Capacity Evaluation ("FCE") that Bobel planned to receive from his physician and to forward a letter from Bobel's physician indicating the prognosis and anticipated return to full duty.

According to Bobel, his FCE was initially scheduled for the last week of

August 2003, but was delayed due to the necessity of approval by Bobel's insurance plan. Bobel claims that on September 3, 2003, he sent a letter to Patula explaining that he would not receive the FCE before the September 5, 2003 deadline. Bobel claims that on September 10, 2003, Patula advised Bobel that he could continue with an extended leave of absence, but that the District would interview to fill Bobel's old position and another open technician position. Bobel also claims that Patula promised Bobel that if Bobel was able to return to work before his position or the open position was filled, Bobel could fill the available position.

Bobel claims that he underwent the FCE on September 12, 2003, and that after the FCE was completed, he telephoned his former direct supervisor, Steve Distler ("Distler") and informed Distler that Bobel thought the FCE would show that he was ready to return to full duty. Bobel alleges Distler called Bobel on September 17, 2003, and told Bobel that the District had interviewed and hired two technicians, but that one of them was not due to begin work until October 6, 2003. Bobel claims that he received the formal results of the FCE on September 19, 2003, indicating that he could return to full-duty, and that he faxed the results to Patula and Distler on September 22, 2003. Bobel claims that on September 23, 2003, he received a letter dated September 18, 2003, advising him that his employment had been terminated. Bobel brought the instant action alleging a violation of the FMLA by failing to reinstate him to his position and alleging that the District retaliated against Bobel for taking his FMLA leave.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses

are consistent with the complaint" and that "[m]atching facts against legal elements come later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. Violation of FMLA Leave Provisions

Defendants argue Bobel was afforded the twelve weeks of leave as required under the FMLA. The FMLA provides the following:

> Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
> **(A)** Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
>
> **(B)** Because of the placement of a son or daughter with the employee for adoption or foster care.
>
> **(C)** In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

5

> **(D)** Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a). Defendants argue that Bobel cannot rely upon any voluntary extensions of the FMLA period as a basis for an FMLA claim because Defendants could not extend the set FMLA period. In support of their position, Defendants cite *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132 (7th Cir. 2001). In *Thomas*, the plaintiff's employer granted its employees all the rights available to the employees under the FMLA. *Id.* at 1136. The court in *Thomas* found that despite the fact that the plaintiff's employer granted the plaintiff all the rights under the FMLA, the plaintiff's alleged FMLA claim was not in actuality a FMLA claim since her employer did not have the requisite number of employees for coverage and therefore the plaintiff's claim was a breach of contract claim. *Id.* Thus, *Thomas* supports Bobel's notion that an employer cannot appoint an employee with rights under the FMLA since coverage under the FMLA is determined by the FMLA provisions themselves.

Bobel does not challenge Defendants' contention that they were not capable of extending Bobel's FMLA rights despite the fact that the main thrust of the complaint is that Bobel relied on the promised extensions by District employees. Bobel, apparently discovering the deficiency in his complaint, now contends that the main bases for his FMLA claim are that the District unlawfully required Bobel to provide a physician's release and that the District erred in failing to notify Bobel of

the policy. Despite the fact that these violations of the FMLA were not explicitly laid out in the complaint, Bobel is correct that such alleged violations of the FMLA can be inferred from the facts alleged in the complaint. Bobel alleges specifically that the District refused to restore him to his position "until he provided a physician's release to return to work 'full-duty.'" (Compl. Par. 8). Bobel is also correct that although he has not specifically alleged that he would have been able to return to work within the FMLA period if Defendants had not required a release from his physician, there is no contrary allegation in the complaint and, in the absence of such facts, we are required to make inferences in favor of Bobel. *Thompson*, 300 F.3d at 753. Bobel does explain in detail in his complaint that his physician "would not release him to work 'full duty' until the physician performed a" FCE, and Bobel explains in detail that he awaited the FCE in order to obtain the release and the FCE was not completed until after the FMLA period ended. (Compl. Par. 8-15). In fact, Bobel explains that the FCE should have been completed in August 2003, but that it was rescheduled due, not to Bobel's health status, but because of a delay in the approval by his insurance provider. (Compl. Par. 13).

Pursuant to 29 U.S.C. § 2614(a)(4), an employer can, "[a]s a condition of restoration, . . . have a uniformly applied practice or policy that requires each such employee to receive certification from the health care provider of the employee that the employee is able to resume work, except that nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that

governs the return to work of such employees." 29 U.S.C. § 2614(a)(4). In addition, pursuant to 29 C.F.R. 825.310(e) and 29 C.F.R. 825.301, an employer that requires certain approval from an employee's physician prior to reinstatement must provide certain types of notification to the employee.

Bobel argues that the District's decision to require him to provide a physician's release was not done in accordance with a "uniformly applied practice or policy" and that he did not receive the requisite notice required under the FMLA. Defendants do not directly respond to either argument in their reply brief and instead doggedly contend that they provided Bobel with the twelve weeks leave as is required under the FMLA. Whether or not the District applied the requirement to Bobel in a manner that was consistent with a uniformly applied practice or policy and whether Bobel received proper notice of the policy cannot be determined solely based upon the pleadings and thus such a determination would be premature at this juncture. Therefore, we deny Defendants' motion to dismiss the FMLA claim.

II. Retaliation Claim

Defendants argue that Bobel has failed to state a valid FMLA retaliation claim. Defendants argue that "[i]n order to plead a *prima facie* case of retaliatory discharge under the FMLA, the Plaintiff must demonstrate, *inter alia*, a causal connection between his protected activity and the Defendant's adverse employment action." (Mot. 2-3). However, Defendants provide absolutely no legal support for

8

their assertion. First, under the federal notice pleading standard the proper inquiry is not whether a plaintiff has alleged facts to match up with all of the elements of the plaintiff's claim. *Sanjuan*, 40 F.3d at 251. Also, Defendants, by seeking to require Bobel to "demonstrate" that there was a causal connection, are improperly seeking to require Bobel to prove certain matters at the pleadings stage.

In fact, Bobel is not required to prove anything at the instant juncture. Rather the court's sole inquiry is whether or not Bobel has made sufficient allegations to provide Defendants with notice of the claim against them. Bobel alleges that he took leave under the FMLA. (Compl. Par. 6). He also alleges that during his leave Defendants repeatedly complained that his absence was a hardship to the District and that other employees were forced to fill in for Bobel and that some of his work was not done. (Compl. Par. 9, 10, 14). Bobel also alleges that the District refused to allow him to return to work until he obtained a release from his physician which Bobel contends prevented him from returning to work within the FMLA leave period. Such allegations are sufficient to allege a retaliatory violation of the FMLA which "protects employees from retaliation, making it unlawful for employers to discriminate against employees who have exercised their rights under the FMLA." *Thomas*, 251 F.3d at 1139. Defendants also seek to delve into the merits of their position, arguing that "it is crystal clear that the Plaintiff was afforded his rights under the FMLA and more." (Mot. 4). That may or may not be true, but such an analysis would be premature at this juncture. Therefore, we deny Defendants'

motion to dismiss the FMLA retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion to dismiss in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 28, 2005