IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAYMOND BOBEL, )
)
        Plaintiff, )
)
v. ) No. 05 C 2482
)
)
BOLINGBROOK PARK DISTRICT, )
)
        Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Bollingbrook Park District's ("BPD") motion for summary judgment. For the reasons stated below, we grant in part and deny in part BPD's motion for summary judgment. We also grant summary judgment *sua sponte* to Bobel on Bobel's interference claim.

## BACKGROUND

Plaintiff Raymond Bobel ("Bobel") alleges that he began working for BPD in February 2000. Bobel claims that in May 2003, he worked for BPD as a Building and Aquatic Technician. Bobel states that in May 2003, he needed to have spinal surgery in order to correct a lower back condition and that he requested leave from

1

BPD on May 13, 2003. On May 19, 2003, BPD allegedly granted Bobel's request for leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and his leave was effective beginning on May 13, 2003. Bobel claims that between May 2003 and August 2003, while he was on leave, he kept BPD informed regarding his medical condition. According to Bobel, BPD stated that it would not restore him to his prior position until he provided BPD with a release from a physician indicating that Bobel was ready for full duty. Bobel claims that in a letter dated August 6, 2003, BPD's Resources Director Michelle Abbott ("Abbott") informed Bobel that his FMLA leave would be exhausted on August 11, 2003, and told Bobel that his continued absence was placing a hardship on BPD operations. Bobel also claims that Abbott informed him that he could extend his unpaid leave by forwarding a request to James Patula ("Patula"), the BPD's Superintendent of Parks and Planning. Bobel claims that he forwarded such a request to Patula on August 13, 2003. On August 19, 2003, Patula allegedly sent a letter to Bobel indicating that Bobel's FMLA leave had been extended to September 5, 2003, and informing Bobel that other BPD employees were being "overworked" in his absence and that some of Bobel's jobs were not getting completed at all. (Compl. Par. 10). In the letter, Patula also allegedly told Bobel to forward the results of the Functional Capacity Evaluation ("FCE") that Bobel planned to receive from his physician and to forward a letter from Bobel's physician indicating the prognosis and whether Bobel could return to full duty.

According to Bobel, his FCE was initially scheduled for the last week of August 2003, but was delayed pending approval by Bobel's insurance plan. Bobel claims that on September 3, 2003, he sent a letter to Patula explaining that he would not receive the FCE before the September 5, 2003 deadline. Bobel claims that on September 10, 2003, Patula advised Bobel that he could continue with an extended leave of absence, but that BPD would conduct interviews to fill Bobel's old position and another open technician position. Bobel also claims that Patula promised Bobel that if Bobel was able to return to work before his position or the open position was filled, Bobel could fill the available position.

Bobel claims that he underwent the FCE on September 12, 2003, and that after the FCE was completed, he telephoned his former direct supervisor, Steve Distler ("Distler") and informed Distler that Bobel thought the FCE would show that he was ready to return to full duty. Bobel alleges that Distler called Bobel on September 17, 2003, and told Bobel that BPD had interviewed and hired two technicians, but that one of them was not due to begin work until October 6, 2003. Bobel claims that he received the formal results of the FCE on September 19, 2003, indicating that he could return to full duty, and that he faxed the results to Patula and Distler on September 22, 2003. Bobel claims that on September 23, 2003, he received a letter dated September 18, 2003, advising him that his employment had been terminated. On April 26, 2005, Bobel brought the instant action alleging a substantive violation of the FMLA by BPD for failing to reinstate him to his position

3

and alleging that BPD retaliated against Bobel for taking his FMLA leave.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

**DISCUSSION**

BPD is moving for summary judgment on Bobel's claim that BPD interfered with his substantive rights under the FMLA, and on Bobel's claim of retaliatory discharge under the FMLA.

I. Interference Claim

Bobel claims that BPD interfered with his substantive rights under the FMLA when it failed to reinstate him after his FMLA leave had expired. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, including the right to reinstatement. 29 U.S.C. § 2615 (a)(1); 29 U.S.C. § 2614(a)(1); *see also Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 804 (7th Cir. 2001)(stating that "[e]ligible employees are . . . entitled to reinstatement"). The FMLA also allows for employers to require certification that an employee is able to return to work before allowing that employee to return. 29 U.S.C. § 2614(e). However, any certification requirements must be part of a "uniformly applied practice or policy" and the employer must provide employees taking FMLA leave specific written notice of

such certification requirements "either at the time notice of the need for leave is given or *immediately* after leave commences and the employer is advised of the medical circumstances requiring the leave." 29 U.S.C. § 2614 (e); 29 C.F.R. § 825.301 (b)(1)(v); 29 C.F.R. § 825.310 (e) (emphasis added).

In the instant action, it is undisputed pursuant to Local Rule 56.1 that on May 19, 2003, six days after Bobel's last day at work, BPD sent Bobel a letter stating that it was designating Bobel's leave as FMLA leave. (BPD Resp. SAF Par. 57). It is also undisputed pursuant to Local Rule 56.1 that this letter stated nothing regarding a need for certification before Bobel could return to work, and that BPD's FMLA policy, which was sent to Bobel along with the letter, failed to state that Bobel could not return to work without providing certification. (BPD Resp. SAF Par. 58-59). BPD argues that it orally informed Bobel "sometime prior to July 18, 2003," that he would need certification before returning to work. (SOF 23). BPD also admits that the first time it informed Bobel in writing of the certification requirement after he took FMLA leave was in a letter dated August 6, 2003, only five days before his leave was originally set to expire. (Resp. SAF Par. 60-16). Such notice, made well after Bobel took FMLA leave and only days before his leave was set to expire, is clearly not sufficient "immediate" notice of BPD's certification requirement. BPD makes much in its motion of Bobel's alleged procrastination in obtaining certification from his doctor. (Mot. 8-10). However, BPD has not provided any evidence showing that Bobel received proper notice of BPD's certification

6

requirement.

BPD admits in its memorandum in support of its motion for summary judgment that Bobel's "failure to obtain the physician's note was the sole basis for his inability to return to work." (Mot. 8). Bobel also states that he was physically able to return to work on August 11, 2003, and that he would have returned if he had not been required to present certification from a doctor. (Resp. SAF Par. 64). In light of the fact that the undisputed evidence shows BPD did not give proper notification of its certification requirement and that BPD admits that Bobel's failure to produce such certification was the only reason that Bobel's employment was not reinstated, we find that no reasonable trier of fact could find other than that Bobel's substantive right to reinstatement under the FMLA was violated. Accordingly, we deny BPD's motion for summary judgment on Bobel's interference claim. In addition, in light of the fact that BPD had notice that its FMLA notification to Bobel would be an issue in this action and that BPD was able to present its arguments on the subject, we grant summary judgment *sua sponte* to Bobel on his interference claim. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 893 (7th Cir. 2005)(stating that "[i]n order to grant summary judgment *sua sponte*, the court must give the losing party reasonable notice and a fair opportunity to present evidence" on the issue that is the basis for the grant of summary judgment).

II. Retaliation Claim

BPD is also moving for summary judgment on Bobel's claim that he was retaliated against in violation of the FMLA. The Seventh Circuit has held that, in addition to the substantive rights under the FMLA, "the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); *see also Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005)(citing 29 U.S.C. § 2615(a)(2) and 29 U.S.C. § 2615(b)). Unlike with substantive interference claims, the thrust of a claim of retaliation under the FMLA is "whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *King*, 166 F.3d at 891. A plaintiff claiming retaliation can proceed with either direct evidence of retaliation or the indirect method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *King*, 166 F.3d at 892.

To show a *prima facie* case of retaliation under the indirect method of proof, a plaintiff must show: " (1) he was a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who are in a different class." *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). Once a *prima facie* case is established, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment

action." *Id.* If the employer is able to rebut the *prima facie* case, "[t]he plaintiff, then, has the opportunity to demonstrate" that the given reason was a pretext, meaning that "'the proffered reason was not the true reason for the employment decision' and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue." *Id.* (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

In the instant action, Bobel does not raise sufficient evidence to proceed under the direct method of proof, and instead proceeds under the indirect method of proof. However, Bobel does not point to any similarly-situated employees of BPD who did not take FMLA leave and who were treated more favorably than him, in either his response to the instant motion or his Local Rule 56.1 statement of additional facts. Accordingly, Bobel has failed to establish a *prima facie* case of retaliation. *See Mitchell v. Dutchmen Mfg., Inc.,* 389 F.3d 746, 749-50 (7th Cir. 2004)(stating that "[f]ailure to satisfy any one element of the *prima facie* case dooms an employee's retaliation claim" and granting summary judgment to defendant when plaintiff failed to point to "other similarly situated employees who did not take leave were not also subjected to" an adverse employment action). Accordingly, we grant BPD's motion for summary judgment on Bobel's FMLA retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we grant BPD's motion for summary judgment on Bobel's retaliation claim, and deny BPD's motion for summary judgment on Bobel's FMLA interference claim. We also grant summary judgment *sua sponte* to Bobel on his interference claim.

```
                                        _____
                                        Samuel Der-Yeghiayan
                                        United States District Court Judge
```

Dated: April 17, 2006