IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAYMOND BOBEL,                          )
                                        )
        Plaintiff,                      )
                                        )
   v.                                   )   No. 05 C 2482
                                        )
                                        )
BOLINGBROOK PARK DISTRICT,              )
                                        )
        Defendant.                      )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Bolingbrook Park District's ("BPD") motion to reconsider or, in the alternative, to seek an interlocutory appeal. For the reasons stated below, we grant the motion to reconsider.

## BACKGROUND

Plaintiff Raymond Bobel ("Bobel") alleges that he began working for BPD in February 2000. Bobel claims that in May 2003, he worked for BPD as a Building

1

and Aquatic Technician. Bobel states that in May 2003, he needed to have spinal surgery in order to correct a lower back condition and that he requested leave from BPD on May 13, 2003. On May 19, 2003, BPD allegedly granted Bobel's request for leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and his leave was effective beginning on May 13, 2003. Bobel claims that between May 2003 and August 2003, while he was on leave, he kept BPD informed regarding his medical condition. According to Bobel, BPD stated that Bobel could not be restored to his prior position until he provided BPD with a release from a physician indicating that Bobel was ready for full duty. Bobel claims that in a letter dated August 6, 2003, BPD's Resources Director Michelle Abbott ("Abbott") informed Bobel that his FMLA leave would be exhausted on August 11, 2003, and told Bobel that his continued absence was placing a hardship on BPD's operations. Bobel also claims that Abbott informed him that he could extend his unpaid leave by forwarding a request to James Patula ("Patula"), BPD's Superintendent of Parks and Planning. Bobel claims that he forwarded such a request to Patula on August 13, 2003. On August 19, 2003, Patula allegedly sent a letter to Bobel indicating that Bobel's FMLA leave had been extended to September 5, 2003, and informing Bobel that other BPD employees were being "overworked" in his absence and that some of Bobel's jobs were not

getting completed at all. (Compl. Par. 10). In the letter, Patula also allegedly told Bobel to forward the results of the Functional Capacity Evaluation ("FCE") that Bobel planned to receive from his physician and to forward

a letter from Bobel's physician indicating the prognosis and whether Bobel could return to full duty.

According to Bobel, his FCE was initially scheduled for the last week of August 2003, but was delayed pending approval by Bobel's insurance plan. Bobel claims that on September 3, 2003, he sent a letter to Patula explaining that he would not receive the FCE before the September 5, 2003 deadline. Bobel claims that on September 10, 2003, Patula advised Bobel that he could continue with an extended leave of absence, but that BPD would conduct interviews to fill Bobel's old position and another open technician position. Bobel also claims that Patula promised Bobel that if Bobel was able to return to work before his position or the other open position was filled, Bobel could fill the available position.

Bobel claims that he underwent the FCE on September 12, 2003, and that after the FCE was completed, he telephoned his former direct supervisor, Steve Distler ("Distler") and informed Distler that Bobel thought the FCE would show that he was ready to return to full duty. Bobel alleges that Distler called Bobel on September 17, 2003, and told Bobel that BPD had interviewed and hired two

technicians, but that one of them was not due to begin work until October 6, 2003. Bobel claims that he received the formal results of the FCE on September 19, 2003, indicating that he could return to full duty, and that he faxed the results to Patula and Distler on September 22, 2003. Bobel claims that on September 23, 2003, he

received a letter dated September 18, 2003, advising him that his employment had been terminated. On April 26, 2005, Bobel brought the instant action alleging a substantive violation of the FMLA by BPD for failing to reinstate him to his position and alleging that BPD retaliated against Bobel for taking his FMLA leave. On April 17, 2006, we granted BPD's motion for summary judgment on Bobel's retaliation claim, denied BPD's motion for summary judgment on Bobel's interference claim, and granted summary judgment *sua sponte* in favor of Bobel on his interference claim ("April 17 Opinion"). BPD is now asking the court to reconsider the entry of summary judgment in favor of Bobel on the interference claim.

## DISCUSSION

BPD has filed a motion to reconsider, asking the court to vacate its entry of summary judgment for Bobel on the interference claim. Three days after BPD

filed the instant motion, the Seventh Circuit issued an opinion in *Harrell v. United States Postal Service*, 445 F.3d 913 (7th Cir. 2006), upon which BPD primarily bases its arguments in its reply brief to the instant motion to reconsider. On May 23, 2006, we granted Bobel leave to file a surreply that presented his arguments in response to *Harrell* and the arguments BPD raised in its reply brief, and BPD filed a response to Bobel's surreply.

### A. Federal Rule of Civil Procedure 60(b)

The arguments raised by BPD relating to *Harrell* in its reply brief was presented to the court more than ten business days after the court's April 17 Opinion. Therefore, BPD's arguments relating to *Harrell* cannot be considered by the court under Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e) (stating that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment"). Instead, BPD must proceed under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"), which "provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Peacock v. Board of School Com'rs of City of Indianapolis*, 721 F.2d 210, 213 (7th Cir. 1983). A party may seek relief under Rule 60(b)(6) "when [Rule 60(b) provisions] (1) through (5) are inapplicable, and equitable action is appropriate to

accomplish justice." *Id.* Put otherwise, "[r]elief under 60(b)(6) is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust." *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986); *see also Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 188 (7th Cir. 1985)(stating that "Rule 60(b)(6) authorizes a federal court to vacate a final judgment for 'any other reason justifying relief from the operation of the judgment' [and that the rule] 'should be liberally applied to accomplish justice'"). One such situation can be when there is subsequent controlling case law that would alter the court's decision. *See Peacock*, 721 F.2d at 214 (stating that "a 60(b)(1) motion filed within the time for an appeal is a proper means for calling the trial court's attention to an intervening controlling appellate decision" and that such a controlling appellate decision can be a reason to grant a Rule 60(b)(6) motion).

In the instant action, BPD filed its Rule 60(b) motion prior to this court's entry of a final judgment, and thus Bobel is not prejudiced by the motion. In addition, because there has not been a final judgment, the policy concerns regarding the finality of decisions are not implicated in this case. Instead, by considering BPD's arguments relating to the Seventh Circuit's controlling case law, we are potentially conserving judicial resources by applying the most recent case law pertaining to this action. *See Deck v. Peter Romein's Sons, Inc.*, 109

F.3d 383, 386-87 (7th Cir. 1997)(stating that "if a new law may be applied retroactively to a case pending on appeal, it follows, a fortiori, that the new law may be applied to an action . . . which, at the time of enactment, had not even proceeded to a final judgment in the district court"). Bobel has not objected to considering *Harrell* under Rule 60(b). Therefore, we find that BPD's motion to reconsider is appropriate under Rule 60(b), and will consider the merits of the parties' arguments.

### B. The *Harrell* Opinion

In the court's April 17 Opinion, we discussed the fact that the FMLA allows employers to require certification that an employee is able to return to work before allowing that employee to return. 29 U.S.C. § 2614(e). However, we also stated that, pursuant to the FMLA and its accompanying regulations, any certification requirements must be part of a "uniformly applied practice or policy" and the employer must provide employees taking FMLA leave specific written notice of such certification requirements "either at the time notice of the need for leave is given or *immediately* after leave commences and the employer is advised of the medical circumstances requiring the leave." 29 U.S.C. § 2614 (e); 29 C.F.R. § 825.301 (b)(1)(v); 29 C.F.R. § 825.310 (e) (emphasis added). In our April 17 Opinion, we found it undisputed that after BPD informed Bobel that it

was placing him on FMLA leave, Bobel did not receive any notification of BPD's certification requirement until "sometime prior to July 18, 2003," when he received oral notification. (Resp. SAF Par. 58-60). We also found it undisputed that Bobel did not receive written notification of the certification requirement until he received a letter dated August 6, 2003, which was only five days before his leave was originally set to expire. (Resp. SAF Par. 58-60). Accordingly, we found that such notice, which was made after Bobel took FMLA leave and only days before his leave was set to expire, was not "immediate" notice of BPD's certification requirement, and thus we granted summary judgment in favor of Bobel on the interference claim.

The court's April 17 Opinion was, in large part, based on a regulation to the FLMA that states that "[s]pecific notice shall . . . be given to any employee from whom fitness-for-duty certification will be required either at the time notice of the need for leave is given or immediately after leave commences and the employer is advised of the medical circumstances requiring the leave . . . ." 29 C.F.R. § 825.310 (e). We also based our April 17 Opinion on a regulation that states that any necessary notice to employees, including notice of any certification requirements, "shall be given within a reasonable time after notice of the need for leave is given by the employee--within one or two business days if feasible." 29 C.F.R. § 825.301 ( c). In light of the unequivocal language in these regulations,

we granted summary judgment *sua sponte* in favor of Bobel on his interference claim.

In *Harrell*, however, the Seventh Circuit found that 29 C.F.R. § 825.310 and 29 C.F.R. § 825.301 do not contain absolute mandates regarding the necessary notice to employees of certification requirements. *Harrell*, 445 F.3d at 930. The plaintiff in *Harrell* was fired after taking FMLA leave for not providing his employer with the required certification, even though the plaintiff claimed that he did not receive written notification of the certification requirement until *after* he was ready to return to work. *Id.* at 915-16. Specifically, the plaintiff in *Harrell* became ill on February 20, 2000, and told his employer that he would need at least four weeks off from work on February 10, 2000. *Id.* On February 23, 2000, plaintiff sent his employer another letter stating that his doctor said he could return to work on March 6, 2000, and, also on February 23, plaintiff's employer sent plaintiff a letter stating that he would need to submit a medical certification before returning to work. *Id.* The *Harrell* plaintiff claimed that he did not receive defendant's February 23 letter until March 7, the day after he attempted to return to his job. *Id.* at 916. The plaintiff was eventually terminated on April 27, 2000, after he refused to provide his employer with appropriate certification. *Id.* at 917. The Seventh Circuit affirmed the district court's decision in favor of the employer, finding that the plaintiff had "ample notice" of the certification

requirement, which was evidenced by the plaintiff's deposition testimony in which he admitted to being aware of his employer's requirement that all employees provide certification after medical absences of more than twenty-one days. *Id.* at 930. The Seventh Circuit also found that the plaintiff was not harmed by any deficiencies in the defendant's notice, due to the fact that he failed to provide adequate medical certification even after he received notice of the certification requirement. *Id.* Accordingly, because the plaintiff in *Harrell* had notice of the certification requirement and because he was not actually harmed by any deficiencies in the notice, the Seventh Circuit granted defendant summary judgment on plaintiff's FMLA interference claim. *Id.*

Bobel, like the plaintiff in *Harrell*, admitted in his response to BPD's Local Rule 56.1 statement that he knew that BPD had a policy requiring all employees to provide a doctor's note before returning from a medical absence of three days or more. (Resp. SF Par. 11-16). It is also undisputed that Bobel was told prior to July 18, 2003, more than three weeks before he was expected back at work, that he needed to provide certification to BPD. (Resp. SF Par. 23). Bobel also does not dispute that on or about July 18, 2003, he met with his physician, who told Bobel that he would require a FCE before the physician would release Bobel for work. (Resp. SF Par. 24). Bobel, however, did not schedule this test until September 19, 2003, more than two months after he admits to receiving notice of

the certification requirement and more than one month after his FMLA leave was set to expire. (Resp. SF Par. 45-46). Bobel admits that the reason he did not get the certification earlier was that Bobel was not sure of whether his insurance would cover the necessary tests. (Resp. SF Par. 26-28). Like the plaintiff in *Harrell*, Bobel had notice of BPD's certification notice, albeit not exactly in the manner required under 29 C.F.R. § 825.301 (b)(1)(v) and 29 C.F.R. § 825.310 (e), and any harm done to Bobel by the delay in written notice could easily have been cured in the time between when he received notice of the certification requirement and when he was ultimately terminated on September 17, 2003. In fact, Bobel was in a much better position to avoid harm in this case, given that he received notice of BPD's certification requirement three weeks before he was scheduled to return to work, than the plaintiff in *Harrell*, who did not receive notice of the requirement until after his FMLA leave had expired. Therefore, based on the foregoing, we grant BPD's motion for reconsideration, vacate our entry of summary judgment for Bobel on the interference claim, vacate our denial of BPD's motion for summary judgment on the interference claim, and grant BPD's motion for summary judgment on the interference claim.

## CONCLUSION

Based on the foregoing analysis, we grant BPD's motion for reconsideration, vacate our denial of BPD's motion for summary judgment on the interference claim and our entry of summary judgment for Bobel on the interference claim, and grant BPD's motion for summary judgment on the interference claim.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 19, 2006